UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

AGRIPINO FIGUEROA, SAMUEL
MUNOZ, and GABRIEL ARROYO,

       Plaintiffs,

   v.

CITY OF CAMDEN, JOSEPH A.
MARINI, individually and as
Chief of Camden Fire
Department, CHRISTINE T.J.
TUCKER, individually and as
Business Administrator of
Camden, THE STATE OF NEW
JERSEY DEPARTMENT OF
PERSONNEL, JOHN C. KRAUS,
individually and in his
capacity as Director of
Selection Services,
INTERNATIONAL ASSOCIATION OF
FIRE FIGHTERS LOCAL #2578,
INTERNATIONAL ASSOCIATION OF
FIRE FIGHTERS LOCAL #788, THE
HONORABLE GWENDOLYN A. FAISON,
as Mayor of Camden, and
THEODORE Z. DAVIS,
individually and as Chief
Operations Officer of Camden,

      Defendants.

HONORABLE JOSEPH E. IRENAS

CIVIL ACTION NO. 08-CV-59
(JEI)


**OPINION**
**(Docket Nos. 11, 20, 22)**

**APPEARANCES:**

ROONEY & ROONEY
By: Michael T. Rooney, Esq.
Two Penn Center Plaza
1500 JFK Blvd., Suite 200
Philadelphia, PA 19102
    Counsel for Plaintiffs

1

```
OFFICE OF THE CAMDEN CITY ATTORNEY
By:  Felix P. Gonzalez, Esq.
City Hall-4th Floor-Suite 419
520 Market Street
P.O. Box 95120
Camden, NJ 08101-5120
     Counsel for Defendants City of Camden, Joseph A. Marini,
     Christine T.J. Tucker, Hon. Gwendolyn A. Faison

OFFICE OF THE ATTORNEY GENERAL OF NEW JERSEY
DEPARTMENT OF LAW AND PUBLIC SAFETY, DIVISION OF LAW
By:  Lisa Dorio Ruch, Esq.
25 Market Street
P.O. Box 112
Trenton, NJ 08625-0112
     Counsel for Defendants State of New Jersey, Department of
     Personnel and John C. Kraus

SPEAR, WILDERMAN, BORISH, ENDY, SPEAR & RUNCKEL, PC
By:  James Katz, Esq.
1040 North Kings Highway
Suite 202
Cherry Hill, NJ 08034
     Counsel for Defendants International Association of Fire
     Fighters Local #2578 and International Association of Fire
     Fighters Local #788

MADDEN & MADDEN, PA
By:  Patrick J. Madden, Esq.
108 Kings Highway East, Suite 200
P.O. Box 210
Haddonfield, NJ 08033
     Counsel for Defendant Theodore Z. Davis
```

**IRENAS**, Senior District Judge:

This matter appears before the Court on a joint Motion to Dismiss by Defendants International Association of Fire Fighters Locals 788 and 2578, a joint Motion to Dismiss by the New Jersey Department of Personnel and John C. Kraus, and a Motion to Dismiss by Theodore Z. Davis.  For the reasons set forth below, the Court will grant the aforementioned Motions.

**I.**

**A.**

Agripino Figueroa ("Figueroa"), Samuel Muñoz ("Muñoz"), and Gabriel Arroyo ("Arroyo") (collectively "Plaintiffs") are firefighters for the Camden Fire Department (the "Fire Department"). (Compl. at ¶ 18.)  Plaintiff also claim to be members of both Defendants International Association of Fire Fighters Local #2578 ("Local 2578") and International Association of Fire Fighters Local #778 ("Local 778") (collectively "Unions"). (*Id.*)  Defendant John C. Kraus ("Kraus") is the Director of Selection Services for the New Jersey Department of Personnel ("NJDOP"), also a Defendant. (*Id.* at 13.)  Defendant Theodore Z. Davis ("Davis") is the Chief Operations Officer of the City of Camden. (*Id.* at 17.)[1]

Plaintiffs are on the current list of firefighters eligible for promotion to the rank of Captain, however, Plaintiffs allege that Defendants have failed to utilize the existing list. (*Id.* at ¶¶ 19-20.)  According to Plaintiffs, in early 2006, they arranged meetings with Camden officials to show how the City of Camden could save money by promoting from the current list. (*Id.*

---

[1] Plaintiffs have also named as Defendants the City of Camden ("City" or "Camden"), Joseph A. Marini, the Chief of Camden Fire Department ("Chief" or "Marini"), Christine T.J. Tucker, the Business Administrator of Camden ("Tucker"), and Gwendolyn A. Faison, Mayor of the City of Camden ("Mayor") (collectively "City Defendants") however, none of them are parties to these Motions to Dismiss.

at ¶ 28.)  Defendant Davis was appointed the Interim Chief
Operating Officer of Camden on December 14, 2006, a position that
was made permanent on September 17, 2007.  (Davis Cert. at ¶¶ 2-
3.)  A hiring and promotion freeze was announced by Defendant
Davis, effective March 1, 2007, which, Plaintiffs allege was in
retaliation for their complaints.  (Compl. at ¶ 29.)

Camden, along with the NJDOP, has announced the scheduling
of "another test to establish a new eligibility list for said
promotions, even though promotions . . . have not been awarded to
Plaintiffs who are on the current list ."  (*Id.* at ¶ 22.)  The
new test was scheduled to take place on January 26, 2008,[2] and
would have affected future additions to the promotions list.
(*Id.* at ¶¶ 33, 39.)  Plaintiffs allege that the new test was
announced with a "very short application deadline and a test

---

[2] Plaintiffs' Complaint was filed on January 4, 2008, before
the new test was to be administered.  On January 16, 2008,
Plaintiffs filed a motion seeking a preliminary injunction to
halt the implementation of the new test.  (Docket No. 2).  The
State of New Jersey (the "State") maintained that the existing
list needed to expire or be exhausted before the new test could
be implemented.  (Letter from the State of New Jersey, January
17, 2008, p. 2.)  The existing list is not to expire until
December 2008.  (*Id.* at 4.)  Finally, the United States
Department of Justice reviews all aspects of the promotion
process, and according to the State, the review was not to be
completed until "long after" the test was administered.  (*Id.* at
2.)  The NJDOP had advised the Attorney General's office that it
did not expect a new list to be ready until September 2008.  (*Id.*
at 3.)  At Plaintiffs' request, the Court ordered a withdrawal of
the application for the preliminary injunction on January 18,
2008.  (Docket No. 8.)  At present, nothing in the record
reflects whether the new test was actually administered or if the
new list was actually prepared.

scheduled prematurely," while appropriate study materials and a course offered by the NJDOP were not available.  (*Id.* at ¶ 42.) In addition, the new promotions list would require firefighters, already on the existing list, to complete a new requirement of certification on National Incident Management System 700.  (*Id.* at ¶ 39.)

The current promotions list, according to Plaintiffs, does not expire until December 2008.  (*Id.* at ¶ 30.)  They assert that it is "historical practice" for the lists to be extended for a period of "'three years plus one'," plus an additional year and half to account for the hiring and promotion freeze.  (*Id.* at ¶¶ 31-32.)

Plaintiffs contend that Defendants have failed to meet their obligations under the 1980 Consent Decree, an agreement between the United States Government and various cities in the State, including Camden.  (*Id.* at ¶ 25; Df. NJDOP Br. at 18.)  The Consent Decree, the result of a previous employment discrimination lawsuit regarding firefighters and certain New Jersey cities, and a supplemental Consent Decree entered into in 1990, sought to insure the non-discriminatory selection of qualified firefighters.  (Df. NJDOP Br. at 18.)

Plaintiff Figueroa asserts that the NJDOP has "repeatedly failed and refused to recognize and credit" him in his employee history file.  (Compl. at ¶ 37.)  He has not been, he claims,

5

credited with "time in grade" since July 1, 2005, when he was appointed to the position of Fire Prevention Specialist-UFD. (*Id.*)  At that time he began to serve in the Fire Marshall's office on a provisional basis, but was "told by a Camden personnel employee that he was in permanent status." (*Id.*)  He further alleges he was promoted to the position of Fire Captain as a "Floater on a four month Pilot Program, the positions expected to be made permanent as of February 2007." (*Id.* at ¶ 38.)  Presumably, his position has not yet been made permanent.

Plaintiffs Munoz and Arroyo are qualified candidates for promotion to Fire Captain who believe that they will be harmed by the implementation of the new test and the additional requirements for candidates. (*Id.* at ¶ 39.)

Plaintiffs allege that Defendants failed to "promote from applicable promotions lists and/or . . . give 'time in grade' seniority to the Plaintiffs in the same time and manner as to other ethnic/racial groups." (*Id.* at ¶ 19.)  Plaintiffs claim that the current Captains Promotion List has a higher percentage of minority representatives than usual. (*Id.* at ¶¶ 20, 23.) While, twenty-eight candidates were promoted from the previous list in its first week and a half of use, the current list contains more minority candidates, and only six of those candidates have been promoted from that list in a year and a half. (*Id.* at ¶ 28.)  Plaintiffs further allege that Fire

6

Department Chief Marino uses racial and ethnic slurs regularly in their place of employment and over county radio.  (*Id.* at ¶ 27.)

## B.

Plaintiffs' Complaint contains five Counts.  Count I alleges that the City Defendants and Davis discriminated against Plaintiff with respect to their "compensation, terms, conditions, or privileges of employment" because of their race in violation of Title VII of the Civil Rights Act of 1964.  (*Id.* at ¶ 45.) They further allege that the Unions aided and abetted in the discrimination by failing to prevent it.  (*Id.*)  Furthermore, Defendant Kraus and the NJDOP aided and abetted and directly discriminated by promulgating the new promotions list.  (*Id.*)

Count II alleges that all Defendants have, "acting under color of state law, intentionally deprived Plaintiffs of" rights secured by the Constitution and by the Consent Decree in violation of 42 U.S.C. § 1983.  (*Id.* at ¶ 50.)  Plaintiffs allege that Defendants deprived them of rights secured by the "First, Fifth, and Fourteenth Amendments . . . by depriving them of property rights without due process of law" for failing to promote Plaintiffs and by retaliating against them.  (*Id.*)

Count III alleges intentional discrimination by failing to timely promote Defendants and creating a hostile work environment due to their race in violation of the New Jersey Law Against

7

Discrimination ("LAD"), N.J.S.A. § 10:5-1 *et seq.* (Compl. at ¶¶ 55-57.)

Count IV alleges that the discriminatory practices increased in retaliation for complaints and writing letters reporting the aforementioned conduct in violation of the New Jersey Conscientious Employee Protection Act ("CEPA") N.J.S.A. 34:19-1 *et seq.* (Compl. at ¶ 61.)

Count V alleges the employment contract between the firefighters and Camden and the Employee Manual were breached due to failure to follow prescribed procedures for granting promotions and "time in grade."[3]

Before the Court are three Motions to Dismiss Plaintiffs' claims:  (1) a joint Motion by the Unions; (2) a joint Motion by the NJDOP and Defendant Kraus; and, (3) a Motion by Defendant Davis.  For the reasons explained herein, the Court will grant the aforementioned Motions.

## II.

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon

---

[3] Count V of Plaintiffs' Complaint alleges that "the employment contract and Employee Manual have been breached by Defendants City of Camden, the Camden Fire Department, and officials employed therein."  (Compl. at ¶ 67.)  There do not appear to be any allegations in this count against the Unions, the NJDOP, or Defendant Kraus.

which relief can be granted."  In order to survive a motion to
dismiss under Federal Rule of Civil Procedure 12(b)(6), a
complaint must allege facts that raise a right to relief above
the speculative level.  *Bell Atlantic Corp. v. Twombly,* 127 S.
Ct. 1955, 1965 (2007); *see also* Fed. R. Civ. P. 8(a)(2).  While a
court must accept as true all allegations in the plaintiff's
complaint, and view them in the light most favorable to the
plaintiff, *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d
Cir. 2008), a court is not required to accept sweeping legal
conclusions cast in the form of factual allegations, unwarranted
inferences, or unsupported conclusions.  *Morse v. Lower Merion
Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  The complaint must
state sufficient facts to show that the legal allegations are not
simply possible, but plausible.  *Phillips*, 515 F.3d at 234.
Furthermore, "a naked assertion of conspiracy . . . gets the
complaint close to stating a claim, but without some further
factual enhancement it stops short of the line between
possibility and plausibility of entitlement to relief."  *Twombly*,
127 S.Ct. at 1966 (internal quotations omitted).


### III.

### A.

The NJDOP, Defendant Kraus, and Defendant Davis have
asserted immunity from the entire suit on the basis of the

Eleventh Amendment.[4]  The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  This immunity has been broadly interpreted and extended to prohibit nearly all suits by private individuals, regardless of that individual's citizenship.  *See, e.g.*, *Bd. of Tr. of Univ. of Ala. v. Garret*, 531 U.S. 356, 363 (2001); *Employees of the Dep't of Pub. Health & Welfare v. Dep't of Pub. Health & Welfare*, 411 U.S. 279, 280 (1973) ("[I]t is established that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state.").  Furthermore, the immunity "applies regardless of whether a private plaintiff's suit is for money damages or some other type of relief."  *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 765 (2002).

The protections of the Eleventh Amendment also extend to protect entities and persons when "the state is the real, substantial party in interest."  *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945).  Specifically, state agencies

---

[4] Defendant Davis incorporated all of the NJDOP and Defendant Kraus's claims of Eleventh Amendment immunity into his Motion to Dismiss.  (Letter from Defendant Davis's Counsel, May 2, 2008.)

and officials acting in their official capacity are generally afforded this protection. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.") (internal citations omitted); *Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655, 658 (3d Cir. 1989) ("A state agency is entitled to immunity from a suit in federal court under the eleventh amendment when a judgment against it would have had essentially the same practical consequences as a judgment against the State itself.") (internal citations omitted).

However, there are two important exceptions to Eleventh Amendment immunity. The first such exception is when a state has consented to a suit. However, in order to consent, a State must make a "'clear declaration' that it intends to submit itself" to a court's jurisdiction. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675-76 (1999) (internal citations omitted); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984) (requiring "that the State's consent be unequivocally expressed" to be subjected to suit). Alternatively, Congress may abrogate the state's immunity for suits brought pursuant to federal statutes if it "authorizes such a suit in the exercise of its power to enforce the Fourteenth

11

Amendment." *Coll. Sav. Bank*, 527 U.S. at 670.  However, any such abrogation by Congress must be an "unequivocal expression of congressional intent to 'overturn the constitutionally guaranteed immunity of the several States.'" *Pennhurst*, 465 U.S. at 99.

One additional limited exception allows suits against state officials in their official capacities where the plaintiff is seeking prospective, injunctive relief for violations of federal law.  *See Pennhurst*, 465 U.S. at 102-03; *Edelman v. Jordan*, 415 U.S. 651, 666-67 (1974); *Ex Parte Young*, 209 U.S. 123 (1908).

**B.**

In order to determine if a state agency or official is an arm of the state, and therefore entitled to immunity under the Eleventh Amendment, the Court must look at:  "(1) whether the payment of the judgment would come from the state, (2) what status the entity has under state law, and (3) what degree of autonomy the entity has." *Febres v. Camden Bd. of Educ.*, 443 F.3d 227, 229 (3d Cir. 2001) (citing *Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir.1989) (en banc)). While no single factor is determinative, the Court has frequently held that the first is the most significant.  *See, e.g.*, *Chisolm v. McManimon*, 275 F.3d 315, 323 (3d Cir. 2001); *Carter v. City of Philadelphia*, 181 F.3d 339 (3d Cir. 1999); *Christy v. Pa. Turnpike Comm'n*, 54 F.3d 1140 (3d Cir. 1995); *Fitchik*, 873 F.2d

at 659-660.

This Court has previously held that the NJDOP is a state agency entitled to Eleventh Amendment immunity.  *Antonelli v. New Jersey*, 310 F. Supp. 2d 700, 712-12 (D.N.J. 2004), *aff'd* 419 F.3d 267 (3d Cir. 2005); *Bennet*, 288 F. Supp. 2d at 681.[5]  As such, without specific state consent or congressional abrogation, any claims against the NJDOP or Defendant Kraus in his official capacity are barred by the Eleventh Amendment.

## C.

Defendant Davis also asserts that he is entitled to Eleventh Amendment immunity as a state official, and as such, the Court is required to consider his position under the *Fitchik* analysis discussed above.  Defendant Davis was appointed the Chief Operating Officer (COO) of Camden pursuant to the Municipal Rehabilitation and Economic Recovery Act (MRERA).  N.J.S.A. 52:27BBB-1 *et seq.*  In considering who would bear the financial burden of a judgment against him, the Court notes that "[t]he

---

[5] The NJDOP is a department within the executive branch of the New Jersey government.  N.J.S.A. 11A:2-1 ("There is established within the Executive Branch of State government a principal department which shall be known as the Department of Personnel, which shall consist of . . . subdivisions and officers and employees . . . .").  Because the NJDOP and Defendant Kraus are by statute part of the state executive branch, any monetary judgment against them would be paid out of the state treasury.  *Antonelli*, 310 F. Supp. 2d at 712-13; *Bennet*, 288 F. Supp. 2d at 681.

salary, benefits, and costs of the chief operating officer shall be an expense of the State and paid through the Department of the Treasury." N.J.S.A. 52:27BBB-7(d). However, the statutory scheme allows for him to be sued in his capacity as a municipal employee, without holding the State liable. N.J.S.A 52:27BBB-32. This section protects the COO from liability in his personal capacity, and as a State employee. It also deems him a municipal employee subject to liability and provides him with the protections of the New Jersey Tort Claims Act and New Jersey Contract Liability Act as a "deemed" municipal employee for actions in "tort, contact or in the nature of tort." *Id.*

Furthermore, "the chief operating officer shall exercise the functions, powers and duties of the mayor." N.J.S.A 52:27BBB-9. While the COO is appointed by and serves "at the pleasure of the Governor," this level of gubernatorial oversight is not sufficient in and of itself to look past the functions the COO is actually serving on a day to day basis. *See Febres,* 445 F.3d at 231 (holding that the Camden Board of Education was not entitled to immunity when the Governor appointed three of its members and was entitled to veto any action it too; "Gubernatorial appointment of board members typically weighs only 'slightly' in favor of immunity"). While the COO remains ultimately accountable to the Governor, he retains a great deal of autonomy in the performance of his duties.

14

Finally, as discussed above, the COO's status under state law is somewhat mixed, but due to the provisions exempting him from liability in his role as a state employee, and the expansive scope of his statutorily provided power on the municipal level, including his statutory designation as a "deemed" municipal employee, the COO should be considered a municipal employee for the purposes of this suit.  Because the *Fitchik* factors indicate that the COO is not solely an officer of the State, Defendant Davis is not protected by Eleventh Amendment immunity in as much as he is sued in his capacity as a municipal employee.

## IV.

### A.

Count I of Plaintiffs Complaint alleges action on the part of all Defendants in violation of Title VII of the Civil Rights Act of 1964.  42 U.S.C. § 2000e *et seq.*  Title VII is one of the specific instances described above where Congress has expressly abrogated the states' Eleventh Amendment immunity.

> "In *Fitzpatrick v. Bitzer*, the Court found present in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the 'threshold fact of congressional authorization' to sue the State as employer, because the statute made explicit reference to the availability of a private action against state and local governments in the event the Equal Employment Opportunity Commission or the Attorney General failed to bring suit or effect a conciliation agreement."

*Quern v. Jordan*, 440 U.S. 332, 344 (1979) (citing *Fitzpatrick v.*

15

*Bitzer*, 427 U.S. 445, 448 n. 1, 449 n. 2, 452 (1976)).
Therefore, were the NJDOP or Defendant Kraus Plaintiffs'
employer, they would not be protected by the Eleventh Amendment.
*Shawer v. Indiana Univ. of Pa.*, 602 F.2d 1161, 1163 (3d Cir.
1979) ("It is therefore clear beyond question that when Congress
. . . extended Title VII to state governments, it did so
pursuant to Section 5 of the Fourteenth Amendment and thereby
abrogated any existing immunity of the states from liability for
discriminatory employment practices.").

However, at no point do Plaintiffs allege that either the
NJDOP or Defendant Kraus are in fact their employer, as defined
by Title VII.  Rather, Plaintiffs's Complaint states that "the
NJDOP and John C. Kraus . . . have issued a notice of the
scheduling of another test to establish a new eligibility list."
(Compl. at ¶ 22.)  Furthermore, in their brief, Plaintiffs allege
that the NJDOP Defendant Kraus "have usurped portions of the
separate civil authority of the municipalities, including Camden,
with respect to hiring and promoting fire fighters."  (Pl. NJDOP
Br. at 7.)[6]  Based on these allegations, Plaintiffs claim that
the NJDOP is acting as an "employment agency" as defined under
Title VII because they "participate in qualifying and testing

---

[6] References to "Pl. NJDOP Br." refer to Plaintiffs' brief
in opposition to the NJDOP/Kraus Motion; references to "Pl. Union
Br." refer to Plaintiffs' brief in opposition to the Unions'
Motion; references to "Pl. Davis Br." refer to Plaintiffs' brief
in opposition to Defendant Davis's Motion.

city employees". (*Id.* at 7-8.)  Title VII defines an "employment agency" as "any person regularly undertaking with or without compensation to procure employees for an employer or to procure for employees opportunities to work for an employer and includes an agent of such a person."  42 U.S.C. § 2000e(c).[7]  However, despite Plaintiffs' creative argument, the NJDOP has specific duties established by statute, and acting as an employment agency is simply not one of them.  *See* N.J.S.A. 11A:2-1 *et seq.* Therefore, because the NJDOP and Defendant Kraus are not Plaintiffs' employer, they cannot be subject to liability under Title VII.

## B.

Plaintiffs' claim under Title VII faces another hurdle. Those proceeding with Title VII employment discrimination claims must follow the administrative procedures set forth in the statute.  42 U.S.C. § 2000e-5.  Section 2000e-5 requires an aggrieved party to file, within 180 days of the alleged discriminatory practice, a charge with the EEOC and receive a "right to sue" letter before bringing an action.  *Id.*  While, this procedure is not jurisdictional, and rather a defense subject to waiver and estoppel, a party must still exhaust these

---

[7] The definition of "person" explicitly includes "governments," "governmental agencies," and "political subdivisions."  42 U.S.C. § 2000e(a).

administrative remedies before suing in federal court. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982); *Waiters v. Parson*, 729 F.2d 233, 236-37 (3d Cir. 1984).

The Unions and Defendant Davis assert that because Plaintiffs have failed to file a charge with the EEOC, that any claim against them under Title VII must be dismissed. While Plaintiffs correctly argue that *Waiters* and subsequent decisions stand for the proposition that failure to file with the EEOC does not deny this Court subject matter jurisdiction, those cases do not stand for the proposition that a plaintiff may completely circumvent the statutory framework without consequence. Rather, they require the Court to consider the Defendants' argument under the standards of Rule 12(b)(6) rather than 12(b)(1). *Anjelino v. New York Times Co.*, 200 F.3d 73, 87-88 (3d Cir. 1999).

At no point in their pleadings or their briefs do Plaintiffs claim that they personally filed a charge against any of the Defendants with the EEOC.[8]  Furthermore, the Unions and Defendant Davis asserted the failure to file with the EEOC as a defense in

_____

[8] While Plaintiffs claim to have "complained to every one of the defendants; attended meeting at all level of the local government and in their unions; written letters and sent e-mails; made phone calls to present their grievances" (Pl. Union Br. at 8; Pl. Davis Br. at 10), at not point do they claim to have either followed the formal grievance procedure set forth in the contract with the City or to have contacted the EEOC prior to initiating this litigation. *See Anjelino*, 200 F.3d at 95-96 ("[F]ailure to exhaust internal administrative remedies negatively impacts [Plaintiffs'] ability to prove the Union liable under Title VII and the NJLAD.").

their initial Rule 12 motions, and Plaintiffs do not suggest that the defense has been waived.[9] [10]   Therefore, Count I of the Complaint is dismissed as to the Unions, the NJDOP, Defendant Kraus, and Defendant Davis.

## V.

### A.

Count II of the Complaint alleges that Defendants have, acting under color of state law, intentionally deprived them of federally protected rights in violation of 42 U.S.C. § 1983.  To state a claim under 42 U.S.C. § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and the laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  Furthermore, "[t]he color of

---

[9] The Unions and Defendant Davis specifically asserted Plaintiffs' failure to file with the EEOC in their Motions to Dismiss.  While the NJDOP and Defendant Kraus assert Eleventh Amendment immunity as their primary defense to the Title VII claim, Plaintiffs do not allege that the NJDOP and Defendant Kraus waived the failure to file defense.  The Court is not inclined in any event to find their failure to assert this defense as a waiver after it was already brought to the Court's attention and asserted by two other co-defendants' Motions.

[10] Plaintiffs' only other argument against the assertion of this defense is that it would be unfair in light of the history in Camden to force them to follow the federally mandated procedure, without offering any legal support for their argument. The Court is unpersuaded by this argument as it was entirely within their own power to file a charge with the EEOC prior to commencing this suit.

state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law." *Groman Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995).

### B.

Plaintiffs have alleged that the Unions "aided and abetted" the state and local government in willful discrimination against the Plaintiffs.  They suggest that this action made the Unions "willful participant[s] in joint activity with the State or its agents." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1977). As a preliminary matter, it is generally accepted that unions are not state actors for the purposes of § 1983.  *See Jackson v. Temple Univ.*, 721 F.2d 931 (3d Cir.1983) (affirming summary judgment where plaintiff failed to provide evidence of state action in union's failure to take grievance to arbitration); *Johnson v. Int'l Bhd. of Teamsters, Local 380*, 256 F.App'x 481, 483 (3d Cir. 2007) ("[L]abor unions are generally not state actors-they are private entities.") (citing *Ciambriello v. County of Nassau*, 292 F.3d 307, 323-24 (2d Cir. 2002)); *Weber v. Potter*, 338 F. Supp. 2d 600, 608 (E.D.Pa. 2004) (granting summary judgment where plaintiff failed to provide evidence of state action in union's resolution of plaintiff's grievance).  However, one exception to this generalization is when the unions have affirmatively conspired with the state to deprive a plaintiff of

20

his rights.  *See, e.g.*, *Johnson v. Int'l Bhd. of Teamsters, Local 380*, 2007 WL 775604, No. 06-3699 (E.D.Pa. Mar. 8, 2007), *aff'd* 256 F.App'x 481 (3d Cir. 2007).

While it is not entirely clear on the face of their Complaint, Plaintiffs clarify that they intended to allege that the Unions conspired with state and local officials in order to deprive Plaintiffs of their rights.[11]  However, even taking into account Plaintiffs' proposed modifications, "the complaint offer[s] only conclusory allegations concerning an alleged conspiracy among the defendants."  *Schlichten v. County of Northampton*, 2008 WL 2223066, No. 07-4126 (3d Cir. May 30, 2008) (citing *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir.1989) (requiring a conspiracy charge to be pled with specificity)).[12]

---

[11] Plaintiffs concede that whether the Unions as entities are themselves acting under color of state law is a "close issue," and seek leave to amend their Complaint to "add the persons individually who acted 'under color of state law,' such as the presidents of the local chapters."  (Pl. Union Br. 19.) Paragraph 50 of Plaintiffs' Complaint does not actually mention conspiracy, or directly make specific allegations against the Unions.  However, in their briefs, Plaintiffs clarify that their position is that the Unions "aided and abetted the discriminatory actions of the City of Camden."  (*Id.* at 20.)  They further state that they would amend the Complaint to include the terms: "conspired with" and "acted in concert with" as points of clarification.  (*Id.* at 20-21.)  As such, the Court will address Plaintiffs' arguments as if the proffered terms had been included.

[12] *See also Ciambriello*, 292 F.3d at 324 ("A mere conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity."); *Santucci v. Gross*, 2007 WL 2688650, No. 07-373 (E.D.Pa. Sept. 10, 2007) ("Only allegations of conspiracy which

"To make out a § 1983 conspiracy claim, the plaintiff must make specific factual allegations of a combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events in order to deprive plaintiff of a federally protected right." *Fioriglio v. City of Atlantic City*, 996 F. Supp. 379, 385 (D.N.J. 1998), *aff'd mem.* 166 F.3d 1025 (3d Cir. 1998). Furthermore when the unions and the state are in an adversarial position, as they are in the present case by representing the firefighters in employment negotiations, such "conclusory allegations of conspiracy ring especially hollow." *Ciambriello*, 292 F.3d at 234.

In *Johnson*, the Third Circuit affirmed the dismissal of § 1983 against a union despite the union's refusal to pursue a grievance on behalf of particular members because the plaintiff failed to plead facts "suggesting that the state was responsible for the Union or that the Union was acting under color of state law." *Johnson*, 251 F.App'x at 483 (citing *Jackson*, 721 F.2d at 933). Similarly, other than legal conclusions that the Unions "aided and abetted" the other defendants, the Complaint contains no factual allegations indicating a connection between the Unions

_____

are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain other actions of the alleged conspirators taken to achieve that purpose will be deemed sufficient.")

and the state.  As such, nothing in the pleadings indicate that the Unions were acting "under color of state law."  Similarly, on its face, the Complaint contains no specific factual allegations to support a claim that the Unions conspired with the state actors in violation of § 1983.  Accordingly, Count II of Plaintiffs' Complaint as against the Unions is dismissed.[13]

## C.

Plaintiffs present similar § 1983 allegations against the NJDOP and Defendant Kraus.  However, unlike Title VII, Courts have repeatedly held that there was no congressional abrogation of state sovereign immunity in the case of suits brought pursuant to 42 U.S.C. § 1983.  *See,* e.g., *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 66 (1989) ("Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity

---

[13] The Third Circuit generally requires district courts to allow a plaintiff whose claims are subject to a Rule 12(b)(6) dismissal with the opportunity to amend their complaint unless amendment would be inequitable or futile.  *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).  However, Plaintiffs have had the opportunity throughout their briefs to indicate new information to support their allegations, but instead have only added buzzwords like "aided and abetted," "conspired with," and "acted in concert with."  (Pl. Union Br. 20; Pl. NJDOP Br. 13-14; Pl. Davis Br. 13.)  Merely adding conclusory legal allegations would be insufficient to survive any future Motion to Dismiss by the Defendants.  *See Twombly*, 127 S.Ct. at 1966*; Morse*, 132 F.3d at 906.  Plaintiffs have squandered an opportunity to bring additional information or allegations to the Court's attention, and as such the Court believes that any attempt to amend would be both inequitable and futile.

and so to alter the federal-state balance in that respect was
made clear in our decision in *Quern*"); *Quern*, 440 U.S. at 345
(1979).  Similarly, Congress did not abrogate the state's
immunity with regard to state officials acting in their official
capacity.  *Will*, 491 U.S. at 71.  Furthermore, despite Plaintiffs
allegations that entry into the 1980 Consent Decree was an
explicit waiver of sovereign immunity by the state, this Court
and the Third Circuit have held that no such waiver exists.
*Antonelli*, 419 F.3d at 272-73 (3d Cir. 2005) ("The State did not
waive its sovereign immunity under the Consent Decrees.") (citing
*Bennet*, 288 F. Supp. 2d at 682-83).  As such, the Eleventh
Amendment bars the § 1983 claims against the NJDOP and Defendant
Kraus in his official capacity except for prospective injunctive
relief against Defendant Kraus, *see Pennhurst*, 465 U.S. at 101-
03, or damages in his personal capacity, *Kentucky v. Graham*, 473
U.S. 159, 165-67 (1985).


**D.**

     Plaintiffs' § 1983 claims against Defendant Kraus for
injunctive relief in his official capacity and damages in his
personal capacity must also be dismissed.[14]  As discussed above,

---

     [14] There is no indication in the record that Defendant Kraus
acted in anything other than his official capacity.  As such, any
claims against him for damages in his personal capacity are
dismissed.

Part V.A *supra*, Plaintiffs must allege that Defendant Kraus deprived Plaintiffs of a federal statutory or constitutional right.  However, the Complaint is devoid of any specific allegations against Defendant Kraus other than his role in promulgating the new testing standards.  Plaintiffs argue that their due process rights were violated by attempting to institute a new test and issue a new list before all people on the current list have been promoted.  However, Plaintiffs fail to recognize that this Court has previously held that they do not have a constitutionally protected entitlement to their promotion. *Antonelli*, 310 F. Supp. 2d at 716 ("Even a candidate 'who successfully passes an examination and is placed on an eligible list does not thereby gain a vested right to appointment.'") (quoting *In re Crowley*, 473 A.2d 90 (N.J. App. Div. 1984). Furthermore, nothing in this case suggests that Plaintiffs were prohibited from exercising any rights protected by the First Amendment or that they were retaliated against for exercising any such rights.  Plaintiffs are still firefighters, and no federally protected rights were violated by merely failing to promote them once their names were placed on the list.  Accordingly, Count II is dismissed with regard to Defendant Kraus.

## E.

The Supreme Court has held that municipal employees and

officials are "persons" subject to suit under 42 U.S.C. § 1983. *Monell v. Dept. of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978). However, the Court has also held that such an employee or official cannot be held liable under a theory of *respondeat superior*. *Id.* at 691-92. Furthermore, "the mere right to control without any control or direction having been exercised and without any failure to supervise is not enough to support § 1983 liability." *Id.* at 693 n.58 (citing *Goode v. Rizzo*, 423 U.S. 362, 370-71 (1976)). As such, Defendant Davis cannot be liable for the acts of others simply because of his role as the COO.

As was the case with Defendant Kraus, Plaintiffs have failed to identify any specific acts on the part of Defendant Davis that violated their federally protected rights. Rather, Plaintiffs again attempt to rely on a theory of "aiding and abetting." As discussed above, simply alleging that one defendant "aided and abetted" or "conspired with" another is insufficient even under the liberal notice pleading standard.[15] Accordingly, Count II is dismissed as to Defendant Davis.[16]

---

[15] *See* Part V.B and note 12 *supra*.

[16] Plaintiffs are again denied leave to amend as any attempt to do so would be both inequitable and futile. *See* note 13 *supra*.

## VI.

### A.

Count III of the Complaint alleges violations of the NJLAD. N.J.S.A. 10:5-1 *et seq.*  The NJLAD provides protection for employees against the discriminatory conduct of their employers. N.J.S.A. 10:5-12.  As a preliminary matter, to the extent that Plaintiffs base their NJLAD claims on retaliatory conduct, those claims are dismissed as waived as a result of alleging conduct in violation of the New Jersey Conscientious Employee Protection Act.  N.J.S.A. 34:19-8.

### B.

Plaintiffs allege that the Unions directly discriminated by failing to assist Plaintiffs in enforcing their rights.  (Compl. at ¶¶ 45, 54.)  Plaintiffs further allege that there was unlawful discrimination "in the decisions made by Defendants with regard to their promotions and awards of other benefits in violation of the New Jersey LAD."  (Compl. at ¶ 56.)  The NJLAD does expressly prohibit discriminatory conduct by labor unions, N.J.S.A. 10:5-12(b), but it does not impose "an affirmative dut[y] upon unions to protect union employees from their employer's illegal discrimination."  *Skoorka*, 2007 WL 2915087 at *1 (citing *Anjelino*, 200 F.3d at 95-96).  The Court in *Skoorka* found that there could be no claim against the union for merely failing to

27

remedy the employer's discrimination.  Similarly, Unions cannot
be held liable under the NJLAD for merely not acting to prevent
the discrimination of the employers, particularly when Plaintiffs
failed to exhaust Unions internal grievance procedure.  *See*
*Anjelino*, 200 F.3d at 96.  Furthermore, there are no specific
allegations of discriminatory actions taken by the Unions against
the Plaintiffs; none of the specific allegations in "Background
Information" section of the Complaint allege specific conduct on
the part of the Unions.  Likewise, other than vague allusions to
"discrimination," in Count III, there is no indication of direct
discriminatory action on the part of the Unions.  While
Plaintiffs are not required to plead even the *prima facie* case of
discrimination under the NJLAD, they still must meet the standard
of Federal Rule of Civil Procedure 8(a).  *Thomas v. Independence*
*Twp.*, 463 F.3d 285, 295 (3d Cir. 2006).  There is nothing on the
face of the Complaint that would provide the Unions with "fair
notice of what the . . . . claim is and the grounds upon which it
rests."  *Phillips*, 515 F.3d at 231 (internal citations
omitted).[17]  By completely neglecting to make specific
allegations regarding conduct by the Unions, Plaintiffs have

---

[17] "While a complaint attacked by a Rule 12(b)(6) motion to
dismiss does not need detailed factual allegations, a plaintiff's
[Rule 8] obligation to provide the 'grounds' of his
'entitle[ment] to relief' requires more than labels and
conclusions, and a formulaic recitation of the elements of a
cause of action will not do."  *Twombly*, 127 S.Ct. at 1964-65
(alteration in original) (internal citations omitted).

failed to meet this minimal standard.

While not explicit on the face of the Complaint, Plaintiffs clarify in their briefs their intent to allege that the Unions aided and abetted the other Defendants in this conduct.  The NJLAD makes it unlawful "to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so."  N.J.S.A. 10:5-12(e).  One is only liable for "aiding and abetting" under the NJLAD when "he knowingly gives substantial assistance or encouragement to the unlawful conduct of [the] employer."  *Tarr v. Ciasulli*, 181 N.J. 70, 83-84 (2004) (quoting *Failla v. City of Passaic*, 146 F.3d 149, 158 (3d Cir. 1998)).  While it is clearly the Plaintiffs' intent to argue that this is precisely what the Unions did, the Complaint is again devoid of anything beyond mere "blanket assertions."  *Phillips*, 515 F.3d at 231.  Rather, Plaintiffs merely recite the elements of aiding and abetting without alleging any specific conduct.[18] Therefore, Count III of Plaintiffs' Complaint as to the Unions is dismissed.[19]

### C.

Plaintiffs persist that this Court may exercise supplemental

----

[18] *See* note 17 *supra*.

[19] Plaintiffs are again denied leave to amend as any attempt to do so would be both inequitable and futile.  *See* note 13 *supra.*

jurisdiction over their state law claims against the NJLAD and Defendant Kraus pursuant to 28 U.S.C. § 1367(a).  However, the Supreme Court has stated unequivocally that § 1367(a) does not "authorize district courts to exercise jurisdiction over claims against nonconsenting States, even though nothing in the statute expressly excludes such claims." *Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 541 (2002).[20]  Absent waiver by the State, this Court lacks jurisdiction over the NJLAD and CEPA claims against the NJDOP and Defendant Kraus in his official capacity.[21]  Accordingly, Counts III & IV against the NJDOP and Defendant Kraus are dismissed in their entirety.[22]

---

[20] While the doctrine of *Ex Parte Young* allows for suits for prospective injunctive relief against State officials for violations of federal law, no such exception is available for violations of state law. *Allegheny County Sanitary Auth. v. U.S. Envtl. Prot. Agency*, 732 F.2d 1167, 1174 (3d Cir. 1984) (citing *Pennhurst*, 465 U.S. at 106).

[21] No such waiver exists for suits brought under the NJLAD, N.J.S.A. 10:5-12(a).  "The NJLAD does not contain the express language required to waive the State's immunity from suit in federal court." *Bennet*, 288 F. Supp. 2d at 683 (citing *Rudolph v. Adamar of N.J., Inc.*, 153 F. Supp. 2d 528, 540-44 (D.N.J. 2001).  Furthermore, the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 *et seq.* expressly reserves State immunity in its "legislative and executive capacities." *Rudolph*, 153 F. Supp. 2d at 543.  Similarly, there is no language in CEPA that indicates the State has waived its Eleventh Amendment immunity and consented to suit in federal court.

[22] Plaintiffs' claims against Defendant Kraus in his personal capacity are also dismissed as Plaintiffs have failed to plead any facts remotely indicating that Defendant Kraus acted outside of his official capacity.

**D.**

Plaintiffs claim against Defendant Davis for violations of the NJLAD must also be dismissed.  Count III of the Complaint alleges that Defendant Davis violated the NJLAD because he "aided and abetted" in the discriminatory conduct of the Fire Department and Defendant Marini.  Plaintiffs allege Davis:

> [K]new of the discriminatory conduct, knew that the conduct involved breaches of the City's duties to the Plaintiffs, Defendants had some supervisory authority over Plaintiffs, and these Defendants actually substantially assisted and/or encourages the unlawful acts, and furthermore, committed active harassment and/or violated their duties to prevent and halt harassment.

(Compl. at ¶ 58.)  As discussed above, a person may be liable if who aids or abets unlawful employment activity.  *See* Part VI.B *supra*; N.J.S.A. 10:5-12(e); *Tarr*,181 N.J. at 83-84.  However, neither in their briefs nor in their Complaint do Plaintiffs refer to any facts indicating that Defendant Davis took any action to support or participate in discrimination or harassment.[23]  Accordingly, Count III is dismissed as to Defendant Davis.[24]

---

[23] Merely reciting the elements of a cause of action is not sufficient to survive a Motion to Dismiss.  *See* note 17 *supra.*

[24] *See* note 13 *supra.*

31

# VII.

## A.

Count IV of Plaintiffs' Complaint alleges that Defendants have retaliated against them because they have "complained of and written letters reporting the illegal and discriminatory practices" described in the Complaint, in violation of the New Jersey Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 *et seq.*  CEPA prohibits employers from taking any retaliatory action[25] against an employee who reports on suspected illegal activity.  N.J.S.A. 34:19-3.  However, CEPA only prohibits retaliatory action against employees by their *employers*.  *Id.*  While the definition of "employer" is broad, there is nothing in the statute that indicates it encompass labor unions.[26]  *See Skoorka v. Kean University*, 2007 WL 2915087 *1, No. 07-1629 (D.N.J. Oct. 4, 2007) (CEPA does not "impose affirmative duties upon unions to protect employees from their

---

[25] CEPA prohibits "retaliatory action" which is defined as "discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment."  N.J.S.A. 34:19-2(e).

[26] "Employer means any individual, partnership, association, corporation or any person or group of persons acting directly or indirectly on behalf of or in the interest of an employer with the employer's consent and shall include all branches of State Government, or the several counties and municipalities thereof, or any other political subdivision of the State, or a school district, or any special district, or any authority, commission, or board or any other agency or instrumentality thereof." N.J.S.A. 34:19-2(a).

employer's illegal discrimination.") (citing *Anjelino*, 200 F.3d at 95-96).  Plaintiffs argue that the Unions were "group of persons acting directly or indirectly on behalf of or in the interest of an employer with the employer's consent."  (Pl. Union Br. at 14 (quoting N.J.S.A. 34:19-2(a)).)  Plaintiffs claim that the Unions can be considered employers under this definition because they were "acting in concert" with the other Defendants to engage in the illegal activity.  However, Plaintiffs cite no legal basis to support this argument.[27]

Furthermore, to hold unions liable for failing to remedy the potentially illegal acts of the true employers would be "contrary to the approach that the Third Circuit has adopted."  *Skoorka*, 2007 WL 2915087 at *1 (citing *Anjelino*, 200 F.3d 95-96); *see also* Part III.B *supra* (discussing of why unions are not under state control).  Because the Court does not recognize a claim under CEPA against the Unions, Count IV of Plaintiffs' complaint is dismissed as against the Unions.

---

[27] In fact, the only instance in which a union has been considered an employer for the purposes of liability under CEPA was when the aggrieved employee was in fact employed *by the union*.  *Dzwonar v. McDevitt*, 791 A.2d 1020 (N.J. Super. Ct. App. Div. 2002).  Additionally, unlike NJLAD which explicitly provides for liability for aiders and abettors, N.J.S.A. 10:5-12(e), there is no such liability under CEPA.

**B.**

Plaintiffs also allege Defendant Davis took retaliatory action against them in violation of CEPA.  However, as discussed above, only "employers" are liable under CEPA.  While "employer" is defined broadly and includes those acting indirectly on behalf of the employer or with their consent, Plaintiffs have failed to allege any facts that Defendant Davis was acting in such capacity.

Furthermore, Plaintiffs fail to plead facts sufficient to even infer a *prima facie* case of retaliation.  To establish a *prima facie* case under CEPA, Plaintiff must establish (1) his reasonable belief that his employer's conduct violated a law, rule, or regulation; (2) a whistle-blowing activity; (3) an adverse employment action; and (4) a causal connection between her whistle-blowing activity and the adverse employment action. *See Caver v. The City of Trenton*, 420 F.3d 243, 254 (3d Cir. 2005); *Dzwonar v. McDevitt*, 177 N.J. 451, 462 (2003).

In a vain attempt to satisfy the causal connection requirement, Plaintiffs allege that  Executive Order 1, promulgated by Defendant Davis on February 26, 2007 implementing a hiring freeze for the City of Camden was "in direct retaliation for the complaints of the Plaintiffs concerning the adverse impact of the failure to promote from the current list on [sic] minority candidates."  (Compl. at ¶ 29.)  However, the meeting

34

that was the source of the alleged retaliation took place in
"early 2006," before Defendant Davis was appointed the COO of
Camden.  Plaintiffs plead no facts that remotely indicate a
causal connection between these two events, and the Court is of
the opinion that such an allegation without even a shred of
support rises to the level of absurdity and does not even come
close to approaching "plausibility," but rather is precisely the
type of "bald assertion" that the Court is not required to
credit.[28]  *Morse*, 132 F.3d at 906.  Accordingly, Count IV of the
Complaint is dismissed with regard to Defendant Davis.[29]

---

[28] Plaintiffs seemingly ignore the general state of poverty
in the City of Camden.  Camden is a poor city without money or
significant tax revenue.  The situation is so dire that the State
initially took over management of the city pursuant to the MRERA
in 2002, and Defendant Davis was appointed as the new COO in
December 2006.  Seven weeks after Defendant Davis's appointment,
he instituted a hiring freeze in order to conserve the city's
dwindling resources.  It is beyond any conception of reason to
believe that a new COO facing the challenges Defendant Davis did
would issue such a sweeping order as retaliation against three
firefighters who advocated promoting people off the existing list
as a means to save money nine months before he was appointed and
almost a full year before the Order was promulgated.  While the
Court is requires to treat all factual allegations as true, and
provide the Plaintiffs the benefit of "all reasonable
inferences," *Morse*, 132 F.3d at 906, alleging that a city-wide
hiring freeze, implemented by a person who was neither at the
meeting alleged to be the source of the retaliation and was not
appointed COO until approximately nine months after the meeting
took place, and then did not take the alleged retaliatory action
for another two months, when the action was a clearly warranted
effort to stop spending in an impoverished city, is far from a
*reasonable* inference.

[29] *See* note 13 *supra*.

35

## VIII.

Count V of Plaintiffs' Complaint alleges that "the employment contract and Employee Manual have been breached by Defendants City of Camden, the Camden Fire Department, and officials employed therein."  (Compl. at ¶ 67.)  The employment contract is a contract between the firefighters and the City, and the we will assume for purposes of this Motion that the Employee Manual is part of that contract.[30]  While the collective bargaining agreement between the Unions and the City may be deemed incorporated into the overall contractual relationship between the City and the firefighters, the Complaint does not allege that the Unions have breached either the collective bargaining agreement or the employment contract.  (*Id.*)  As there are no allegations in this Count against the Unions, the breach of contract claim is dismissed as to them.

Presumably, Plaintiffs include Defendant Davis, as an official or employee of the City who has breached the firefighters' employment contract.  However, Plaintiffs do not allege that Defendant Davis is actually a party to the contract between the City and its firefighters.  *See Comly v. First Camden Nat'l Bank and Trust Co.*, 22 N.J. Misc. 123, 127 (N.J. Sup. Ct. 1944) ("[A]s a general rule an action on a contract cannot be

---

[30] None of the parties have provided the Court with a copy of the Employee Manual.

maintained against a person who is not a party to it."). Furthermore, Defendant Davis is not Plaintiffs' employer. Similarly, the NJDOP and Defendant Kraus are not Plaintiffs' employers, are not parties to the contracts, and therefore cannot breach the contracts.

The Court sees no reason to impose contractual duties on parties who are not parties to the contracts.  As such, Count V of the Complaint is also dismissed as to the NJDOP, Defendant Kraus and Defendant Davis.


## IX.

For the foregoing reasons Defendants Motions to Dismiss are granted.  The Complaint is dismissed as to the Unions, the NJDOP, Defendant Kraus, and Defendant Davis in its entirety.

The Court will issue an appropriate Order.



Dated: October 2nd, 2008


 s/ Joseph E. Irenas
**Joseph E. Irenas, S.U.S.D.J.**